John P. Aldrich
Idaho Bar No. 6486
**ALDRICH LAW FIRM, LTD.**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
(702) 853-5490
(702) 227-1975 (fax)
*Attorneys for AEHI*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SOUTHERN DIVISION

| | |
|---|---|
| ALTERNATE ENERGY HOLDINGS, INC., a Nevada Corporation,<br><br>Plaintiff,<br>vs.<br><br>JOHN N. GIORGI, an individual, JOHN N. GIORGI, P.C., a professional corporation of unknown orgin, inclusive,<br><br>Defendants. | Case No.: |

COMES NOW Defendant ALTERNATE ENERGY HOLDINGS, INC. ("AEHI"), by and through its counsel of record, John P. Aldrich, Esq., of the Aldrich Law Firm, Ltd., and hereby complains and alleges against the above-named Defendants as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiff ALTERNATE ENERGY HOLDINGS, INC. (hereafter "AEHI") is, and at all relevant times mentioned herein, was, a Nevada Corporation with its principal place of business located in Ada County, Idaho.

2.  Defendant John N. Giorgi is, and at all relevant times mentioned herein, was, an attorney licensed to practice law in the State of New Jersey.

3.  Upon information and belief, Defendant John N. Giorgi, P.C. is, and at all relevant times mentioned herein, was, a professional corporation of unknown origin.

4. This Court has jurisdiction over this matter based on diversity of jurisdiction. Moreover, the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of costs and interest. This court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that Defendants entered into an agreement in this District, with Plaintiff who operates in this District, and this is where the malpractice and breach of duty occurred, and where the breach of contract occurred.

## GENERAL ALLEGATIONS

### The Escrow Acknowledgment

6. AEHI, is a publicly-traded company located in Boise, Idaho, which focuses on the development of sources of clean energy, and is registered with the Securities and Exchange Commission ("SEC").

7. In April 2012, AEHI was dire need of funding to build a nuclear reactor in Idaho (the "Project"), which was critical to AEHI's continued operations. Accordingly, AEHI's former president, Don Gillespie, hired Defendants to provide legal representation to obtain appropriate funding. Defendants were intimately involved in the events set forth herein, and upon information and belief, were also involved in failed financing transactions prior to the one set forth herein. Based on Defendants' legal advice, AEHI approached HAMILTON GUARANTY CAPITAL, LLC ("HGC"), a Texas Limited Liability Company, for funding.

8. On April 19, 2012, HGC sent a "General Terms and Procedure for providing Cash Account" letter to AEHI. The letter was an agreement to negotiate and indicated the transaction would begin with AEHI providing an "Advance Fee" into the escrow agent's bank account. The

agreed upon Advance Fee was $2,000,000.00.

9. HGC specifically required that AEHI use the Nevada law firm of Black & LoBello, LLP, as escrow agents.

10. Based on the representations of HGC and Black & LoBello, as well as the advice of Defendants, AEHI believed that Black & LoBello was an independent third-party, and was not affiliated with HCG in any way. AEHI also believed that Andras Babero, the attorney who would be acting as the escrow agent, was a licensed attorney in good standing in Nevada.

11. On April 30, 2012, HGC sent another letter to AEHI purporting to detail similar transactions HGC has allegedly conducted in the past.

12. On May 2, 2012, AEHI and Black & LoBello entered into the Deposit Acknowledgment ("Escrow Acknowledgment"), which detailed the terms of the purported escrow transaction between AEHI and Black & LoBello.

13. The Escrow Acknowledgment provides that the $2,000,000.00 deposit would be released upon the earlier of the following two occasions: (1) first written request for return of the funds from Depositor to Escrow Agent; or (2) if no action has been taken thirty (30) days from the date execution of the Escrow Acknowledgment.

14. Pursuant to the Escrow Acknowledgment, on May 2, 2012, AEHI deposited funds into Black & LoBello's escrow/trust account at Plaza Bank in Las Vegas, Nevada, account 4121580864.

**The Financial Services Agreement**

15. On June 17, 2012, again based on Defendants' legal advice, AEHI and HGC entered into the separate Financial Service Agreement ("FSA").

16.  Pursuant to the FSA, HGC was to raise and/or secure an amount of $200,000,000.00 for AEHI's Project.

17.  In order to secure and hold such a large sum of money, HGC agreed to arrange a Blocked Account for $200,000,000.00 through the General Equity Building Society in Auckland, New Zealand ("GEBS"), and obtain a GEBS Blocked Account Letter demonstrating the availability of the funds.

18.  AEHI would then produce the letter to a Credit Facility Bank, Lombard Odier, and its trader, Dr. William Tao, to be accepted into its trading program.

19.  At all times relevant herein, HGC represented to AEHI that GEBS was a bank with sufficient cash to satisfy the terms of the Agreement for AEHI's Project.

20.  However, as AEHI would later learn, GEBS is not a bank, and is only Financial Services Provider formed in November 2011. GEBS posted less than $5,500,000.00 of cash deposits for fiscal year 2011, and does not have a physical business location, only an online presence.

21.  On or about June 20, 2012, GEBS produced a false Blocked Account Letter.

22.  However, before the trader could examine the letter, Babero contacted the trader directly with a deadline of June 22, 2012 to commit to a Bank Guarantee for the $200,000,000.00.

23.  On June 21, 2012, Dr. Tao sent email correspondence to AEHI and HGC regarding Mr. Babero's breach of banking procedure, questioning his intentions, and stating that he would not work with HGC any further.

24.  Accordingly, on July 4, 2012, AEHI demanded the $2,000,000.00 escrow from Black & LoBello.

25.  Black & LoBello refused AEHI's request, stating that the commissions had been

earned by HGC under the terms of the FSA.

26. On July 5, 2012, Dr. Tao sent a letter to HGC stating that HGC failed to pass Credit Facility Bank's due diligence in violation of the Agreement as well as HGC's terms sheet of April 29, 2012 and procedures letter dated April 30, 2012, and he could therefore not execute any agreement with HGC to assist with the funds.

27. Dr. Tao's letter indicated two reasons for HGC's failure to pass due diligence: "(1) Failure to demonstrate real cash assets deposited at and verified by an acceptable bank licensed in an agreed upon jurisdiction; (2) HGC's business model, as advertised on the Internet, involving and suggesting the application of unorthodox methods to arrange funds and securities between multiple parties."

28. HGC's failure to pass due diligence and provide a valid bank letter of credit backed by the required $200,000,000.00 constitute a material breach of the FSA.

29. As more fully set forth below, Defendants failed in their legal obligations and their representation fell below the standard of care.

**Nevada Litigation**

30. On August 8, 2012, Black & LoBello filed a Complaint in Interpleader in the District Court for the Eighth Judicial District of Nevada (located in Las Vegas, Nevada), Case No. A-12-666618-C, which case is currently pending. In the Complaint, Black & LoBello sought direction as to the respective rights of AEHI and HGC in the $2,000,000.00 escrow deposit.

31. On September 4, 2012, HGC filed a motion seeking to compel arbitration through the International Chamber of Commerce in Dallas, Texas ("ICC"), pursuant to the arbitration clause in the FSA.

32. Using an online calculator provided by the ICC, AEHI estimated the total cost of arbitration would be at least $92,058.00. The cost of ICC arbitration was prohibitive to AEHI, and effectively prevented AEHI from litigating the matter and pursuing the return of its $2,000,000.00 deposit.

33. On January 15, 2013, counsel for AEHI requested that HGC agree to change the arbitration forum from the ICC in Dallas County, Texas, to a more cost-effective local forum.

34. Counsel for HGC refused the request.

35. On February 20, 2013, AEHI filed a Motion to Order Arbitration to Occur in More Cost-Effective Forum. The court denied the motion, but ordered the parties to participate in a settlement conference.

36. A settlement conference was held on April 15, 2013, and HGC agreed to participate in arbitration outside of the ICC, provided that the arbitration occurred in Dallas County, Texas. An arbitration proceeding was commenced in Dallas, Texas before JAMS. In the fall of 2013, Faisal Qureshi, the principal of HGC, was indicted. After months of negotiations between counsel for AEHI and HGC, a proposed settlement was reached. That settlement has not been finalized due to recent orders in the Idaho Federal Court action.

**The Idaho Federal Court Action**

37. AEHI is involved in an action pending in Federal Court in Boise, Idaho, in which the Securities and Exchange Commission ("SEC") accuses AEHI and its former president, Don Gillespie, of securities violations. As a result of this litigation, AEHI was under certain reporting obligations pursuant to court order.

38. The SEC sought and recently obtained a freeze of the $2,000,000.00 deposit currently

held in escrow.

39. The SEC has used its superior resources to investigate HGC's claims that it performed under the terms of the FSA by securing funds of $200,000,000.00. This research included an inquiry to the Financial Markets Authority ("FMA"), a regulator of financial institutions in New Zealand, where the GEBS is allegedly located.

40. In response to the inquiry, the FMA sent the SEC four documents from its file, which contained self-serving statements by GEBS concerning its alleged assets.

41. Susan F. LaMarca, an attorney for the SEC, filed a declaration in support of the SEC's pleadings, in which she summed up the SEC's findings as follows:

> In other words, the GEBS documentation describes a series of circular journal entries in which all purported "funds" originated with GEBS. No actual deposits of cash were made in any account. In particular, according to GEBS's documentation, at no point did HGC "deposit" any money - let alone $200 million - into an "account" held by GEBS.

42. In the pleadings, Ms. LaMarca concludes that HGC lied in its affidavit to the Idaho federal court and that the FSA was part of a scam perpetrated by HGC.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## (PROFESSIONAL MALPRACTICE)

43. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraph 1 through 42 above as though fully set forth herein.

44. As set forth herein above, an attorney-client relationship existed between Plaintiff and Defendants. Pursuant to said relationship, the Defendants owed Plaintiff a duty to exercise reasonable care, skill, and diligence and to act competently in rendering of legal/professional

services.

45. By their acts and omissions as alleged herein below, Defendants breached their duty to exercise reasonable care, skill, and diligence and to act competently, failed to use the care and skill ordinarily exercised in like cases by reputable members of their profession practicing in the same or a similar locality under similar circumstances, and failed to use reasonable diligence and their best judgment in the exercise of their skill and the accomplishment of their learning in an effort to accomplish the best possible result for Plaintiff.

46. By their acts and omissions, the Defendant breached the fiduciary duty owed to Plaintiff, *inter alia*, as follows:

    a. Failing to identify adequate, legitimate, and appropriate sources of funding;

    b. Failing to conduct appropriate and adequate due diligence prior to advising AEHI to sign the Financial Services Agreement with HGC;

    c. After being involved in prior failed attempts to obtain financing, failing to identify the HGC transaction as fraud;

    d. Failing to conduct due diligence on the attorney, Andras Babero, who had been identified to act as the escrow agent, including but not limited to: (1) failing to discover that Babero's license to practice law had been suspended, (2) failing to discover that neither Babero nor his firm had a license to act as an escrow agent, and (3) failing to discover that Babero was not an independent agent, but instead had an existing business relationship with HGC and/or its principal;

    e. Failing to adequately represent AEHI with respect to the Escrow

Acknowledgment;

    f.    Failing to conduct due diligence regarding the legitimacy and/or viability and/or ability to perform of GEBS; and

    g.    Failing to properly advise AEHI regarding its obligations under certain orders of the court in the Idaho federal court action.

47.    As a direct and proximate result of the Defendant's negligence, Plaintiff has suffered damages in an amount to be determined at trial.

48.    Plaintiff has been required to obtain the services of an attorney in order to prosecute this action, and is entitled to recover reasonable attorney's fees and costs of suit.

## SECOND CLAIM FOR RELIEF

## (BREACH OF FIDUCIARY DUTY)

49.    Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraph 1 through 48 above as though fully set forth herein.

50.    The relationship between the attorney and client is a fiduciary relationship of the very highest character and binds the attorney to the cost conscientious fidelity. Because of their role as attorneys for Plaintiff, Defendants owed, at all times relevant hereto, a fiduciary duty to Plaintiff to act with the utmost care, good faith, and honesty in protecting Plaintiff's interests with respect to the attorney-client representation.

51.    By virtue of the attorney-client representation that existed between the Defendants and Plaintiff, the Defendant owed to Plaintiff a fiduciary duty, and by virtue of Plaintiff having placed confidence in the fidelity and integrity of the Defendants and in entrusting the Defendants with Plaintiff's representation in connection with, among other things, Plaintiff's attempt to obtain

adequate and appropriate financing, a confidential relationship existed at all times between Plaintiff and the Defendant.

52. Despite having voluntarily accepted the trust and confidence of Plaintiff, and in violation of this relationship of trust and confidence, the Defendants abused the trust and confidence by failing to protect the legal rights and interests of Plaintiff.

53. By their acts and omissions, the Defendant breached the fiduciary duty owed to Plaintiff, *inter alia*, as follows:

    a. Failing to identify adequate, legitimate, and appropriate sources of funding;

    b. Failing to conduct appropriate and adequate due diligence prior to advising AEHI to sign the Financial Services Agreement with HGC;

    c. After being involved in prior failed attempts to obtain financing, failing to identify the HGC transaction as fraud;

    d. Failing to conduct due diligence on the attorney, Andras Babero, who had been identified to act as the escrow agent, including but not limited to: (1) failing to discover that Babero's license to practice law had been suspended, (2) failing to discover that neither Babero nor his firm had a license to act as an escrow agent, and (3) failing to discover that Babero was not an independent agent, but instead had an existing business relationship with HGC and/or its principal;

    e. Failing to adequately represent AEHI with respect to the Escrow Acknowledgment;

    f. Failing to conduct due diligence regarding the legitimacy and/or viability

and/or ability to perform of GEBS; and

g. Failing to properly advise AEHI regarding its obligations under certain orders of the court in the Idaho federal court action.

54. Plaintiff reasonably relied on the Defendants, as set forth hereinabove. As a direct and proximate result of the Defendant's breach of their fiduciary duty to Plaintiff, Plaintiff has been damaged in an amount to be determined at trial.

55. Plaintiff has been required to obtain the services of an attorney in order to prosecute this action, and is entitled to recover reasonable attorney's fees and costs of suit.

### THIRD CLAIM FOR RELIEF

### (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

56. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraph 1 through 55 above as though fully set forth herein.

57. In every contract between an attorney and client there exists an implied covenant of good faith and fair dealing that the attorney will not do anything to impair the client's right to receive the benefits under the contract.

58. By their acts and omissions as alleged herein above, there existed an implied covenant of good faith and fair dealing that the Defendants would not do anything to impair the Plaintiff's rights to receive the benefits under the contract.

59. As a result of the actions by the Defendants, Plaintiff has been damaged in an amount to be determined at trial.

60. Plaintiff has been required to obtain the services of an attorney in order to prosecute this action, and is entitled to recover reasonable attorney's fees and costs of suit.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants, and each of them, as follows:

1. For actual, compensatory, special and/or general damages in an amount to be determined at trial;

2. For pre-judgment and post-judgment interest;

3. For reasonable attorneys' fees and costs of suit; and

4. For any such other and further relief as the Court deems just and proper.

DATED this 5th day of June, 2014.

ALDRICH LAW FIRM, LTD.

By /s/ John P. Aldrich
John P. Aldrich, Esq.
Idaho Bar No. 6486
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
(702) 853-5490
*Attorney for AEHI*